UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVE NEAL,

        Plaintiff,

v.

ELECTRONIC ARTS, INC.,

        Defendant.
_____/

Case No. 4:04-CV-87

HON. RICHARD ALAN ENSLEN

**OPINION**

This matter is before the Court on Defendant Electronic Arts, Inc.'s Motion for Summary Judgment and Motion for Sanctions pursuant to Federal Rule of Civil Procedure 11. Defendant's Motions have not been timely answered.

**I.    Background**

Plaintiff brought this diversity action alleging one count of invasion of privacy by appropriation, one count of invasion of privacy by false light, and one count of defamation. Plaintiff alleges in the Complaint that Defendant used his likeness in video games produced by Defendant and entitled *Madden NFL Football 2004* and *Madden NFL Football 2005* ("video games"). Plaintiff is a young African-American male and a former football player for Western Michigan University. (Letter from Def.'s att'y, Randy Pomeroy, to Pl., dated Apr. 20, 2004.) A Caucasian football player for the New England Patriots, who won the Super Bowl three times in the last four years, also has the name Steve Neal. Plaintiff's picture was used in the "biographical" portion of the video games, listing his name, but the statistics of the Patriots' Steve Neal. (Def.'s Ex. 6.) The Patriots' Steve

Neal is correctly pictured as a Caucasian in the action portion of both video games.  (Def.'s Exs. 7 & 9.)

Plaintiff "executed a standard NFL Player Contract on April 27, 2001 in conjunction with his try-out with the Tennessee Titans."  (Letter, Apr. 20, 2004; *see also* Def.'s Ex. 1, NFL Player Contract.)  The relevant language from the contract is as follows:

> 4. . . .(b) Player [Plaintiff] hereby assigns to the NFLPA and its licensing affiliates, if any, the exclusive right to use and to grant to persons, firms or corporations (collectively "licensees") the right to use his name, signature facsimile, voice, picture, photograph, likeness, and/or biographical information (collectively "image") in group licensing programs.  Group licensing programs are defined as those licensing programs in which a licensee utilizes a total of six (6) or more NFL player images on products that are sold at retail or used as promotional or premium items. . .
>
> . . . . The assignment in this paragraph shall expire on December 31 of the later of (a) the third year following the execution of this contract, or (b) the year in which this contract expires.
>
> 22. . . . LAW.  This contract is made under and shall be governed by the laws of the State of Tennessee.

Plaintiff acknowledged that he received a signing bonus in the amount of $3,000.00.  (Def.'s Ex. 3, Contract entitled "Signing Bonus" dated Apr. 27, 2001.)

Defendant entered a "License Agreement" with National Football League Players Incorporated ("Players Inc.") on June 18, 2001.  (Def.'s Ex. 4.)  The relevant language of the License Agreement is as follows:

> 2. GRANT OF LICENSE. . . (A). . . .Players Inc. hereby grants to Licensee and Licensee hereby accepts that non-exclusive right, license and privilege of utilizing the trademarks and names of Players Inc. . . . and the names, likenesses []including, without limitation, numbers[], pictures, photographs, voices, facsimile signatures and/or biographical information (hereinafter "identity") of the NFL players listed in

>    Attachment "B", for product(s) in the form of a strategy guide, video and computer game. . . .
>
>    5. TERM. . . (A) The term of this Agreement shall extend from March 1, 2001 to February 28, 2002. . . unless terminated in accordance with the provisions hereof.

This 2001licencsing agreement was extended to include the 2003 and 2004 NFL seasons.[1] (Def. Br. at 3.)

## II.   Motion for Summary Judgment

### A.  Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact.  The party moving for summary judgment bears the initial burden of specifying the basis on which summary judgment should be granted and identifying portions of the record which demonstrate the absence of a genuine issue of material fact. *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)).  Once this initial burden is met, the nonmoving party has the burden of presenting specific facts, supported by the record, showing a genuine issue of material fact. *Bill Call Ford, Inc. v. Ford Motor Co.*, 48 F.3d 201, 205 (6th Cir. 1995) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The nonmoving party cannot merely rest on its pleadings or simply reassert its previous allegations.  *See Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000.)  Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and "set forth specific facts showing there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.

---

[1] Defendant has represented that the 2001 licensing agreement was extended to include the 2003 and 2004 NFL seasons and has offered to produce the full agreement, which includes proprietary terms and conditions, *in camera* should the matter be contested.  Such an offer is unnecessary, since the matter is not contested by Plaintiff.

Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252.

### B.  Analysis

Plaintiff has failed to file a response to Defendant's Motion, even though he has been allowed significant additional time to file a response. Nonetheless, "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded." *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991). The moving party always bears the initial burden of specifying the basis on which summary judgment should be granted and showing the absence of a genuine issue of material fact and the court is required to examine the motion to determine if that burden has been met. *Id.* at 444-45; *see also Cacevic v. City of Hazel Park*, 226 F.3d 483, 486, 492 (6th Cir. 2000).

### a.  **Invasion of Privacy by Appropriation**

"One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy." Restatement (Second) Torts § 652C (1977); *see also Lineberry v. State Farm Fire & Cas. Co.*, 885 F. Supp. 1095 (M.D. Tenn. 1995). Plaintiff "executed a standard NFL Player Contract on April 27, 2001 in conjunction with his try-out with the Tennessee Titans." (Letter, Apr. 20, 2004; *see also* Def.'s Ex. 1, NFL Player Contract.) In this contract, which is governed by Tennessee law, Plaintiff assigned to Players, Inc. and its licensing affiliates the exclusive right to use his name, picture, photograph and likeness. (NFL Player Contract, ¶ 4(b).) Defendant and Players, Inc. contracted to allow Defendant to use the names, likenesses, pictures, and photographs of certain NFL players for video and computer games.

(License Agreement, ¶ 2(A).) Plaintiff's photograph was included in the group of photographs sent to Defendant by NFL. (Strauser Aff. at 1.) The standard NFL Player contract executed by Plaintiff was valid until December 31, 2004. The contract between Defendant and Players, Inc. was executed on June 18, 2001, and *Madden NFL 2005* was published in August of 2004.

Under Tennessee law and the law of the Sixth Circuit Court of Appeals, a person has property rights in his or her name and likeness and can assign that right. *See Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.,* 270 F.3d 298, 325 (6th Cir. 2001) (citing *Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831, 834 (6th Cir. 1983); *Acme Circus Operating Co. v. Kuperstock*, 711 F.2d 1538, 1541 & n.2 (11th Cir. 1983) (recognizing the right of publicity as a personal property right); *State ex rel. Elvis*, 733 S.W.2d 89, 97 (Tenn. App. 1987) ("Unquestionably, a celebrity's right of publicity has value. It can be possessed and used. It can be assigned, and it can be the subject of a contract. Thus, there is ample basis for this court to conclude that it is a species of intangible personal property.")).

Upon review, the Court finds that Plaintiff authorized the use of his likeness and, therefore, Defendant has met its burden and shown that there is no genuine issue of material fact. Since Plaintiff has submitted no evidence to raise a genuine issue of material fact, the Court will dismiss Plaintiff's claims of misappropriation because the use in question was clearly licensed.

    **b.**  **Invasion of privacy by False Light**

To establish a prima facie case of invasion of privacy by false light under Michigan law, Plaintiff must prove that: "One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if: (a) the false light in which the other was placed would be highly offensive to a reasonable person,

and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." Restatement (Second) of Tort § 652E (1977); *see also Freeman v. Unisys Corp.*, 870 F. Supp. 169, 174 (E.D. Mich. 1994) (citing *Duran v. The Detroit News, Inc.*, 504 N.W.2d 715 (Mich. App. 1993)); *Morganroth v. Whitall*, 411 N.W.2d 859, 863 (Mich. App. 1987) (adopting the Restatement (Second) of Torts § 652E). The tort of false light "'rest on an awareness that people who are made to seem pathetic or ridiculous may be shunned' even though they do not have a defamation claim." REX S. HEINKE, MEDIA LAW § 3.4 (Gibson, Dunn & Crutcher 1994) (citing *Douglass v. Hustler Magazine*, 769 F.2d 1128, 1134 (7th Cir. 1985)).

The Complaint alleges that Defendant invaded Plaintiff's privacy by publically placing him in a false light by using his likeness as a representation for a Caucasian player in the NFL. (Compl., ¶¶ 16-21.) The Court can find no case law in support of Plaintiff's claim. Plaintiff's argument that the use of his picture in place of a Caucasian player is highly offensive to a reasonable person is simply contrary to the well-established history of the judiciary not to condone theories of recovery which promote racial prejudice or effectuate discriminatory conduct. *See Palmore v. Sidoti,* 466 U.S. 429 (1984) (reversing state court decision denying custody to Caucasian mother who married an African-American man, who was not the father of the child, because trial court decided child would be stigmatized by private racial biases); *see also Shelley v. Kraemer,* 334 U.S. 1 (1948) (refusing to enforce racially-discriminatory restrictive covenant). To allow Plaintiff recovery based solely on an accidental depiction of his race would wrongly imply a preference of race, which the Court cannot countenance. Upon review, this Court determines that such portrayal and possible

confusion is not highly offensive and does not give rise to a false light claim.  Therefore, Defendant is entitled to summary judgment on Plaintiff's false light claim.

### c. Defamation

The elements of defamation were stated by the Michigan Court of Appeals in *Sawabini v. Desenberg*, 372 N.W.2d 559, 563 (1985):

> The elements of a cause of action for defamation are: '(a) a false and defamatory statement concerning plaintiff; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the publication (defamation per quod ).'

*Id.* (citing *Postill v Booth Newspapers, Inc*, 325 N.W.2d 511 (Mich. App. 1982); Restatement (Second) Torts § 558; *Curtis v Evening News Assoc.*, 352 N.W.2d 355 (Mich. App. 1984); *Ledl v Quik Pik Food Stores, Inc*, 349 N.W.2d 529 (Mich. App. 1984)).  *See also Morganroth v. Whitall*, 411 N.W.2d 859, 861-62 (Mich. App. 1987).  The issue of whether a statement is reasonably capable of a defamatory interpretation is a question of law to be decided by the court.  *Morganroth*, 411 N.W.2d at 862*; Sawabini*, 372 N.W.2d at 379; *see also Puckett v. American Broad. Co., Inc.*, 917 F.2d 1305, *2 (6th Cir. 1990)(unpublished) (citing *Memphis Pub. Co. v. Nichols*, 569 S.W.2d 412, 419 (Tenn. 1978)).  "A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Morganroth*, 411 N.W.2d at 862 (citing *Nuyen v. Slater*, 127 N.W.2d 369 (Mich. 1964).

The Complaint alleges Defendant defamed Plaintiff by stating that Plaintiff was a person other than himself. (Compl., ¶¶ 22-24.)  Defendant is alleged to have defamed Plaintiff by incorrectly using a picture of him or his likeness in an entry in the "biographical" portion of the

7

video game, which contained Plaintiff's likeness and name and the biographical statistics of the New England Patriot's player under the shared name of Steve Neal. (Def.'s Mot., Ex. 6.) In all other portions of the video game, the Patriot's Steve Neal was correctly portrayed as a Caucasian male.

Upon review, the Court determines that as a matter of law, such a statement is not defamatory. First of all, the Court can find no case law which would support a claim of defamation based on the use of a plaintiff's likeness that might suggest that plaintiff is of another race. For the same reasons as described above, merely publishing Plaintiff's picture when the correct picture would be a person of another race is not, by itself, reasonably capable of a defamatory interpretation constituting the basis for the denial of summary judgment.[2] *See, e.g., Clark v. American Broad. Co., Inc.*, 684 F.2d 1208, 1213 (6th Cir. 1982).

Therefore, Defendant's Motion for Summary Judgment will be granted as to Plaintiff's claim of defamation.

## III.    Motion for Sanctions

Defendant's theory for Rule 11 sanctions is that Plaintiff and his attorney have prosecuted claims which are not supported by either existing law or non-frivolous argument for the modification of existing law. *See* Fed. R. Civ. P. 11(b)(2). More particularly, Defendant claims that Plaintiff's counsel was advised by letter of August 17, 2004, to stipulate to a dismissal of his Complaint

---

[2]Plaintiff's claim could also arguably be examined as the incorrect use of the Patriot's Steve Neal's statistics in conjunction with the correct use of Plaintiff's likeness and name. Plaintiff "never made an opening day roster." (Letter, Apr. 20, 2004.) The Patriots have won three of the last four Super Bowl championship games, and the Patriot's Steve Neal signed with the Patriots in 2001 and played in at least part of 2001, 2002 and 2004 seasons. Therefore, the Court also finds that the association of Plaintiff's likeness with the Patriots' Steve Neal's statistics could not reasonably be considered to harm the reputation or to deter third persons from associating or dealing with Plaintiff.

8

because it "clearly fails to state a claim." Instead of voluntarily dismissing the lawsuit, Plaintiff filed an Amended Complaint stating additional allegations. *See* Fed. R. Civ. P. 11(c)(1)(A). Plaintiff's counsel also failed to defend his legal position by failing to respond to Defendant's Motion for Summary Judgment.

When considering the imposition of Federal Rule of Civil Procedure 11 sanctions, the Court must first determine " 'whether the individual's conduct was reasonable under the circumstances.' " *Union Planters Bank v. L & J Dev. Co.*, 115 F.3d 378, 384 (6th Cir. 1997) (quoting *Lemaster v. United States*, 891 F.2d 115, 118 (6th Cir.1989)). For the reasons set forth above in consideration of Defendant's Motion for Summary Judgment, the Court finds that Plaintiff's counsel was not objectively reasonable in pursuing Plaintiff's claims. Plaintiff's counsel filed a claim that he knew or should have known was frivolous and not warranted under existing law. Therefore, this conduct constitutes a violation of Rule 11(b)(2).

However, under Rule 11(c)(2)(A), the Court cannot issue a monetary sanction arising from a Rule 11(b)(2) violation against a represented party. Therefore, to the extent that the Motion seeks sanctions against Plaintiff himself, it is denied.

With respect to Plaintiff's counsel, Rule 11 does authorize monetary sanctions for violations of Rule 11(b)(2). However, before assessing such sanctions, the Court must determine, consistent with *Orlett v. Cincinnati Microwave, Inc.*, 954 F.2d 414, 420 (6th Cir. 1992), what is the least severe sanction adequate to deter the offending conduct. The *Orlett* Court stated:

> In determining an appropriate sanction under amended Rule 11, the court should consider the nature of the violation committed, the circumstances in which it was committed, the circumstances (including the financial state) of the individual to be sanctioned, and those sanctioning measures that would suffice to deter that individual from similar violations in the future. The court should also consider the

circumstances of the party or parties who may have been adversely affected by the violation.

*Orlett*, 954 F.2d at 420.

In the instant case, the offending conduct included pursuing claims for which Plaintiff's counsel knew or should have known there could be no recovery. Plaintiff's counsel was aware that Plaintiff had authorized the use of his likeness. (Letter, Apr. 20, 2004; *see also* Def.'s Ex. 1, NFL Player Contract.) Plaintiff's claims of defamation and false light are based on theories contrary to established policy of neither condoning nor promoting private racial prejudices.

However, the offending conduct is not as extreme as many violations, and the record does not indicate that the person committing the misconduct, Plaintiff's counsel, has any history of filing frivolous claims or motions. Additionally, Plaintiff's counsel has no prior or pending disciplinary action in front of the Michigan Attorney Disciplinary Board. Therefore, the Court determines that the instant conduct should be remedied by a minimal financial sanction of $1,000.00. This kind of financial sanction is appropriate on the facts of this case and is likely to prevent repeated misconduct of this type.

**IV.     Conclusion**

For the above reasons, Defendant's Motion for Summary Judgment will be granted and Defendant's Motion for Sanctions will be granted in part and denied in part.

A Judgment consistent with this Opinion shall issue.

```
                                                     /s/ Richard Alan Enslen
DATED in Kalamazoo, MI:                        RICHARD ALAN ENSLEN
         June 1, 2005                          UNITED STATES DISTRICT JUDGE
```